DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Isoleen V. Dunn, ) | |
| ) | CASE NO. 1:05 CV 2556 |
| Plaintiff(s), ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | (Resolving Doc. No. 24) |
| Richland County Department of Job and ) | |
| Family Services, et al., ) | |
| ) | |
| Defendant(s). ) | |
| ) | |

Before the Court is defendants' motion for summary judgment (Doc. No. 24), plaintiff's brief in opposition (Doc. No. 48, 49), and defendants' reply (Doc. No. 51). For the reasons and as set forth herein, the motion is granted.

**I. BACKGROUND**

**A. Plaintiff's Complaint**

On January 5, 2005, plaintiff Isoleen Dunn ("Dunn" or "plaintiff") filed a complaint in the U.S. District Court for the Southern District of Ohio. Oddly, the complaint filed in the Southern District bore a caption for the Northern District of Ohio. On March 29, 2005, plaintiff filed a motion to transfer venue. That motion was finally granted on June 14, 2005. However, the Clerk of the Southern District apparently mailed the transfer order to an incorrect address and the order was returned to the Southern District on June 29, 2005 as undeliverable. The complaint was not docketed in the Northern District of Ohio until October 31, 2005, when it was assigned to this branch of the Court.

(1:05 CV 2556)

The complaint alleges both race and age discrimination, as well as retaliation, based on the termination of plaintiff's employment by the defendant Richland County Department of Job and Family Services ("RCDJFS"). Plaintiff, who was 56 years old at the time the complaint was filed, asserts jurisdiction under "Title VII, Civil Rights Act of 1964, 42 U.S.C. Section 2000(e), et. seg. [sic] and Ohio Revised Code, Section 4112.02 and 4112.99" (Compl. ¶ 1) and sets forth a single count claim for "violations of Title VII, Civil Rights Act of 1964." In addition to RCDJFS, plaintiff also names Loanne [Lu Ann] Howard, the department's supervisor, as a defendant.

## B. Facts[1]

Dunn was formerly employed as a case worker for RCDJFS. Defendant Lu Ann Howard was plaintiff's direct supervisor during the events leading up to her termination. On January 30, 2003, Howard sent Dunn a memorandum addressing "Delinquent/ Backlogged Work." In the memo, Howard directed plaintiff to follow a "Structured Day" by performing certain of her job

---

[1] Many of the facts are either undisputed or admitted. On August 11, 2006, the Court determined that plaintiff had made several factual admissions by failing to respond to defendants' requests for admissions for almost three months, well beyond the 30-day time frame set by the federal rules. See Fed. R. Civ. P. 36(a). This was not in any way unfair to the plaintiff who had repeatedly engaged in delay, even with respect to this Court's own orders. As the Court pointed out: "If the Federal Rules of Civil Procedure are going to have any meaning at all, they must be followed." (Doc. No. 47, at 3). In addition, the Court noted in its Order that when plaintiff finally did serve her responses to defendants' discovery, she actually did admit several of the requests for admissions, including some that are most damaging to her case.

Although plaintiff continues to argue in her memorandum in opposition to the motion for summary judgment that she should not be deemed to have made these admissions (see Doc. No. 48, at 3-5), the issue has been resolved. The Court finds no reason, and plaintiff has presented no reason, to disturb the Order of August 11, 2006.

(1:05 CV 2556)

duties at very particular times of her workday. The memo made clear that Dunn had to bring her backlog and caseload within acceptable standards by February 28, 2003.

The next day, January 31, 2003, Dunn submitted to Howard a request for vacation leave on Friday, February 14, 2003 and Tuesday, February 18, 2003. (Monday, February 17, 2003 was a holiday.) On February 6, 2003, Howard informed plaintiff that her leave request was being denied because of her work backlog. Between February 7 and February 12, 2003, plaintiff's union steward twice asked Howard to reconsider, indicating that plaintiff and her husband already had paid airplane reservations to go to Chicago, Illinois. The union steward was informed that Dunn should not have made firm plans prior to receiving approval of her leave request and that the leave would still be denied.

On the mornings of February 13, 14 and 18, 2003, Dunn left voicemail messages for Howard, stating that she was ill and would not be coming to work. Two of these days, the 14th and 18th, had been days for which Dunn had been denied vacation leave. After receiving the voicemail message on February 18th, Howard had occasion to speak with another employee, Sandy Switzer, who had just taken a trip to Las Vegas. Switzer mentioned that she had seen Dunn at the airport on the morning of February 14th and that they were on the same plane which stopped in Chicago, where Dunn got off.

When Dunn returned to work on February 19, 2003, she requested approval for sick leave for February 13, 14 and 18, 2003. She submitted an "Emergency Department Discharge Instruction" stating that she had been seen on February 13, 2003 and could return to work on February 15, 2003. On the morning of February 20, 2003, Dunn called in sick again; she

3

(1:05 CV 2556)

returned to work on February 21, 2003, presenting another "Emergency Department Discharge instruction, which stated that she had been seen on February 19, 2003 and could return to work on February 21, 2003.

On February 25, 2003, Dunn was given a Notice of Pre-Disciplinary Conference by Sharlene Neumann, who was then the Social Program Administrator II.  Neumann presided over that conference on March 4, 2003,[2] as the designee of the department director.  Dunn attended the conference, represented by her union representative, who made the following oral statement[3] on her behalf:

> As you probably know she has already submitted it and I will resubmit her doctors excuse for 2-14 through 2-15 to have her off work and there are two other instructions for her here as a part of that doctors excuse and also there is an excuse for her for 2-19 and return to work 2-21-03.  This we do not believe constitutes fraudulent intend, the doctor has put her off work, as I read this contract there is nothing in the contract that says an employee must be home convalescing.  The doctor put her off work for those days and in lieu of the fact there is nothing that says an employee must be home convelecing, we feel as though she was within the realms of the language of the contract...that she has submitted a viable documentation for the sick leave.  The doctor has authorized those days off it is not fraudulent...nothing in those documents that she signed or the doctor signed that isn't factual...ok...so her attempt is not to fraudulent take sick leave.  She was actually sick, she went to the emergency room on the 13th of February, on the 12th of February...on the 12th of February and the doctor put her off...and because she was off yes she did decided to go ahead and go to Chicago as was previously planned...as was previous scheduled not planned.  We do not

---

[2] Neumann's affidavit states that this conference was conducted on March 10, 2003; however, it appears that it actually occurred on March 4, 2003, but Neumann wrote her report and recommendation to Director Doug Theaker on March 10, 2003.  In any event, the precise date is not that important.

[3] The statement was transcribed from a tape recording of the hearing and is contained in full in the report of Neumann dated March 10, 2003, which is attached to Neumann's affidavit.  This quotation is only part of the statement and is set forth here exactly as it appears in the transcript, without any attempt to correct punctuation, grammar, or syntax.

4

(1:05 CV 2556)

> think that this was an attempt to be fraudulent we believe that shw was accurate that she was off the documentation will show that she was scheduled to be off that she should have been off. . . .

(Doc. No. 24-5, p. 2).

Neumann did not believe that Dunn was being honest when she claimed to be sick on February 13, 14 and 18, 2003, and when she requested paid sick leave for these days, two of which had already been denied as vacation days.  Director Theaker had the same belief and he recommended to the Richland County Board of Commissioners that they terminate Dunn's employment for "making a false claim or misrepresentation in an attempt to obtain a county benefit."  Under the County's Discipline Code, this constituted a Group III offense, the only offense level which allows for immediate termination following even a first offense.  The Commissioners did terminate Dunn's employment.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 .  When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion."  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

(1:05 CV 2556)

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." Reid v. Sears Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986) (citing Biechell v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir. 1984)); but see Baer v. Chase, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit"). Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

(1:05 CV 2556)

See also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

### III. DISCUSSION

**A. Threshold Matters**

The complaint is not an exercise in clarity. It alleges jurisdiction under both Title VII and Ohio Rev. Code § 4112.02 and 4112.99 (Compl. ¶ 1). It alleges that plaintiff is an employee and that "defendant" (in the singular) is an employer as defined by Ohio Rev. Code §§ 4112.01 and 4112.01(2). (Compl. ¶ 2). It never makes those same allegations with respect to Title VII. In Section IV, the complaint sets forth the actual causes of action under the heading: "Claims: Violations of Title VII, Civil Rights Act of 1964." It makes no further mention of the Ohio Revised Code.

The Court construes this complaint as being brought solely under Title VII. To the extent it attempts to raise any state law claim of discrimination and/or retaliation, the Court declines to exercise its supplemental jurisdiction and dismisses any such state law claims without prejudice.

The Court notes that Dunn is also attempting to sue Howard, as an individual, under Title VII. This is not permitted; Howard is not an "employer" within the meaning of Title VII.[4] Wathen v. General Elec. Co., 115 F.3d 400, 405 n.7 (6th Cir. 1997). Therefore, Howard is dismissed with prejudice.

---

[4] Although the complaint does not so allege, for purposes of this motion the Court presumes that RCDJFS is an "employer" within the meaning of Title VII.

7

(1:05 CV 2556)

Dunn is also attempting to assert an age discrimination claim under Title VII. There is no authority in Title VII to sue for age discrimination. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 n.4 (1982); Clark v. City of Dublin, 178 Fed. Appx. 522 (6th Cir. 2006). Therefore, to the extent the complaint seeks to assert an age discrimination claim under Title VII, it is dismissed in its entirety.[5]

**B.  Race Discrimination**

Dunn claims that her employment was terminated based on her race, in violation of Title VII. To establish a claim of race discrimination, a plaintiff must show direct evidence of discrimination or, in the alternative, establish a *prima facie* case of race discrimination which then raises a rebuttable inference of discrimination.

**1.  *Prima Facie* Case**

For a *prima facie* case, plaintiff must show: (1) that she is a member of a protected class; (2) that she was subject to an adverse employment action; (3) that she was qualified for the position; and (4) that she was replaced by a person outside her protected class. Mitchell v. Toledo Hosp., 964 F.2d 577, 581 (6th Cir. 1992); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The fourth element may also be established by showing that a

---

[5] Plaintiff argues in her memorandum in opposition to defendants' motion for summary judgment that she has also asserted her age claim under "the Civil Rights Act of 1967." (Doc. No. 48, at 8). One look at the complaint shows that the single count of the complaint is raised only under Title VII, which is sometimes referred to as the Civil Rights Act of 1964. While there is an Age Discrimination in Employment Act of 1967 under which an age claim can and should be brought, plaintiff simply did not mention it in her complaint. An age discrimination claim cannot survive on the plaintiff's pleading and, even applying liberal standards, there would be no justification for amending the pleading at this late date.

(1:05 CV 2556)

similarly situated non-protected employee was treated more favorably than the plaintiff. Mitchell, 964 F.2d at 582-83.

For purposes of this motion, RCDJFS concedes that plaintiff can meet the first three elements of a *prima facie* case. It argues only that she cannot establish the fourth element. In her complaint, Dunn alleges not that she was replaced by a non-protected individual, but only that she was "treated adversely than other similarly situated, non-minority employees based on her race, black." She expressly points to "Bonnie Atwell, a Caucasian female employee, [who] was not terminated from her job when she was accused of defrauding the Defendant Agency." (Compl. ¶ 7(B)).

In Mitchell, supra, the Sixth Circuit defined "similarly situated" as follows:

> . . . the individual with whom the plaintiff seeks to compare [her] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment for it.

964 F.2d at 583.

Defendant argues that Atwell was not "similarly situated" because the offense for which she was disciplined was not a Group III offense.[6] Howard attests in her affidavit that, "[i]n February 2003, Ms. Atwell was accused of cohabitating with a client and of failing to report that

---

[6] Defendant's Request for Admission No. 7, which has been deemed admitted by plaintiff's default of timely response, asked plaintiff to "[a]dmit that no one who is currently employed or was employed in the past by Defendant [RCDJFS] was similarly situated to Ms. Dunn yet had their employment retained." Although this has been deemed admitted, as explained herein, the record evidence establishes the truth of this request even without an admission.

9

(1:05 CV 2556)

client's income which potentially could have affected his eligibility for benefits." (Doc. No. 24-2, ¶ 4). Under RCDJFS's disciplinary code, Atwell was charged with the Group II offense of "willful disregard of any rule, policy or directive of the county." Id. Because her offense was different from Dunn's, her discipline was different. The maximum penalty for a first offense under Group II is a three-day suspension, which Atwell received along with a written warning. Id. A Group III offense, for which Dunn was charged, is considered serious enough to permit termination of employment even upon a first offense.

The Court concludes that Dunn has not established a *prima facie* case of race discrimination.

### 2. Legitimate Nondiscriminatory Reason

Even if plaintiff had established a *prima facie* case, she could still not survive the summary judgment motion.

Once a plaintiff establishes a *prima facie* case of race discrimination, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981). If defendant produces such evidence, "the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity." Id. at 255 (footnote omitted).

Here, there is no dispute that plaintiff sought, but was denied, vacation leave for February 14 and 18, 2003; that she then called in sick for those two days and later sought approval of paid sick leave; that she made her sick-call on February 14, 2003 from the Columbus airport while waiting for a flight to Chicago; and that she was in Chicago from February 14 through 18, 2003

(1:05 CV 2556)

for a pre-planned trip. The defendant simply did not believe plaintiff was being truthful when she requested paid sick leave for those days and, under defendant's policies, this kind of action by the plaintiff warranted immediate termination. See Neumann Aff. ¶¶ 3-4.

The Court concludes that the defendant has articulated a legitimate nondiscriminatory reason for the termination.

### 3. Pretext

Once the defendant comes forward with a legitimate nondiscriminatory reason for its employment action, the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. "This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256 (citing McDonnell Douglas, 411 U.S. 804-05).

The Sixth Circuit has adopted the "honest belief" rule under which an employer can avoid a finding that its claimed nondiscriminatory reason was a pretext for discrimination, if it is "able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." Smith v. Chrysler Corp., 155 F.3d, 799, 806-07 (6th Cir. 1998) (defining standard in the context of an Americans with Disabilities Act claim); see also Balmer v. HCA, Inc., 423 F.3d 606, 614 (6th Cir.2005) (applying Smith rule in Title VII retaliation case).

11

(1:05 CV 2556)

The Court merely reiterates the particularized facts already stated above which establish that the defendant honestly believed Dunn was not being truthful when she claimed to be sick and unable to come to work on two days for which she (not coincidentally, in defendant's view) had been denied vacation leave. Defendant was further justified in thinking Dunn was not being truthful about being sick since there is no dispute that she was actually in Chicago on the days she claimed to be too sick to come to work. Plaintiff's argument that there was nothing in her union contract that prohibited her from going to Chicago even though she was sick simply has no merit. She was not going to Chicago to seek treatment. She went there for personal reasons and she should not expect any employer, least of all a public employer, to pay her sick leave for that. She tried to get vacation leave and, when that failed, she called in sick. Defendant was justified in not believing her claim that she was sick.

The fact that Dunn has submitted emergency room reports does not change the analysis. Anyone can present themselves in an emergency room and claim to be sick. The health care professionals will simply take them at their word and treat them. Defendant could still honestly believe, even in the face of these reports, that plaintiff was not sick and was merely trying to get the time off that she had been denied. Even if defendant was mistaken and plaintiff really was sick, that does not mean that defendant could not have <u>honestly believed</u> plaintiff was not being truthful.

### 4. Pretext *for Discrimination*

In any event, even if plaintiff were able to establish that defendant did <u>not</u> honestly believe that she was faking her sickness and falsely claiming sick leave, plaintiff would still bear

12

(1:05 CV 2556)

the ultimate burden of establishing that defendant's reason for its employment decision was not just pretext, but pretext <u>for discrimination</u>, in this case, race discrimination.  <u>See</u> <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507 (1993).

Plaintiff fails in this regard as well.  She tries to make the argument that she, who is black, was treated differently than a white employee who also made a false representation and was only suspended.  As explained above, the employee Dunn identifies as being "similarly situated" simply was not.  That employee was charged with violating a Group II rule whereas plaintiff violated a Group III rule.  <u>See</u> <u>Braithwaite v. Timken Co.</u>, 258 F.3d 488, 497 (6th Cir. 2001) (rejecting an argument that white employees who were only suspended for violating a different rule than the one plaintiff had violated were "similarly situated" to plaintiff).

There is no evidence in this record that the defendant discriminated against Dunn on the basis of race.

The Court concludes that plaintiff cannot make out a claim of race discrimination under Title VII against RCDJFS.  Therefore summary judgment for the defendant is appropriate on the Title VII race discrimination claim.

**C.  Title VII Retaliation Claim**

Plaintiff alleges that RCDJFS retaliated against her because she "filed a successful class action lawsuit against the Defendant Agency in 1994."  (Compl. ¶ 7(C)).  The lawsuit to which plaintiff refers is <u>Holley v. Richland County Dept. of Human Services</u>, Case No. 5:94CV284 (O'Malley, J.), where Dunn joined two others in a suit filed on February 11, 1994, alleging race discrimination under 42 U.S.C. §§ 1981 and 1983.  On September 29, 1995, Judge O'Malley

13

(1:05 CV 2556)

granted summary judgment to the defendants.  The appeal was dismissed for want of prosecution, then reinstated and dismissed upon the parties' stipulation on January 29, 1996.

"To establish a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in protected activity; (2) that defendant knew of this exercise of her protected rights; (3) that defendant consequently took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and adverse employment action."  Balmer v. HCA, Inc., 423 F.3d 606, 613-14 (6th Cir. 2005) (citing Fenton v. HiSAN, 174 F.3d 827, 831 (6th Cir.1999)).  "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action. . . . Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation."  Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000) (citations omitted).

In this case, plaintiff cannot establish the requisite causal connection.  First, the Court has already rejected any argument that plaintiff has been treated differently from similarly situated employees.  Second, the lawsuit which plaintiff relies upon to underpin her retaliation claim was resolved nine years before the instant suit was filed.  Temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence.  See, e.g., Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986) (plaintiff's discharge four months after filing charge of discrimination would not support inference of retaliation); Brown v.

(1:05 CV 2556)

<u>ASD Computing Center</u>, 519 F.Supp. 1096, 1116 (S.D. Ohio 1981) (plaintiff's discharge three months after announcement of intent to consult EEOC would not support inference "where there are no other indicia of retaliation"), <u>aff'd sub nom</u>, <u>Brown v. Mark</u>, 709 F.2d 1499 (6th Cir. 1983).

In the instant case there is <u>no</u> temporal proximity.  If periods of three or four months are too long to establish the requisite causation, (i.e., <u>Cooper</u> and <u>Brown</u>) clearly there can be no connection after nine years, absent some other evidence or indicia of retaliation.

The Court concludes that defendant is entitled to summary judgment on the claim of retaliation.

**IV.  CONCLUSION**

For the reasons discussed above, to the extent the complaint attempted to set forth any state law claims, those claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c). Defendant Lu Ann Howard, who is not an "employer" within the meaning of the civil rights statutes is dismissed with prejudice.  All age discrimination claims are dismissed for lack of jurisdiction under Title VII.  Summary judgment is granted in favor of defendant Richland County Department of Jobs and Family Services on plaintiff's Title VII claims of race discrimination and retaliation.  The case will be closed, with each party to bear its own costs.

IT IS SO ORDERED.

|  |  |
|---|---|
|   October 3, 2006 |   *s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
|  | U.S. District Judge |